Good morning. May it please the court, I'm Jamie Ganson and I represent the defendant appellant correctional officials in this matter. I will be reserving three minutes for rebuttal. The correctional officials filed a motion to dismiss in the district court asserting qualified immunity and that Mr. Real's allegations failed to state a claim. The district court dismissed numerous claims but improperly postponed consideration of the qualified immunity defense and allowed Mr. Real to amend the following claims. His Eighth Amendment conditions of confinement and conspiracy claim, and these claims are not at issue on this appeal. The following claims that are at issue, which the district court erroneously allowed Mr. Real to amend, are Mr. Real's Fourteenth Amendment due process claims arising out of his gang validation, the prison's decision not to appoint him an investigative employee during the gang validation process, and the processing of his prison grievances, as well as his First Amendment speech and association claims arising out of the compensation of his address book, the reliance on the gang mail drop address contained therein, and reliance on a prison chrono documenting Mr. Real's participation in the Mexican mafia gang's roll call. What's the harm in just making you guys wait a little bit longer? Maybe the guy wouldn't even file an amended complaint. His claims, as I understand it, the district court just said these are unintelligible. I don't even really know. I can't really even get a sense of exactly what he's trying to allege. Let's give him a shot to clarify, and then we'll be in a position to grant you guys qualified immunity if it's warranted. What's the harm in just waiting a little bit longer? I think there's a great harm. Defendants are entitled to qualified immunity at the earliest possible stage of litigation. And the courts have been quite clear that this is a purely legal question. It's a matter of law, of whether violations allege evidence of clearly established violation. This is something that the courts can determine on motion to dismiss. There was nothing stopping the court from determining it here. But the court merely decided not to. It had to subject defendant correctional officials to additional litigation. So what harm? But, you know, the problem is that people go in and sometimes their complaint is unintelligible. Other times the judge says, well, you might have the possibility to amend here. I don't know if it will survive, but you have freely given right to amend. So you're not really in the end to litigation per se at this point. Nothing's happening vis-a-vis the officials. So how can the district court even make a decision on qualified immunity? The district court noted here that Mr. Real's did have a good sense of his claims and was able to articulate them. And both the claims and the documents attached to the complaint showed that the claims that the defendants have brought at issue on this qualified immunity appeal could not be amended possibly under any law to state a viable claim because the law just does not exist to support those claims. The problem here is that the real the district court, you can't appeal the leave to amend, correct? That wouldn't be appealable in our locatory. You can only appeal on qualified immunity, right? The district court, we are appealing on qualified immunity grounds. That's your only basis that you can even be here on an interlocutory appeal. Correct, Your Honor. However, when a court is deciding qualified immunity, they can look at whether clearly established violation occurred and also any inexplicably intertwined issues. So whether or not the matter stayed a claim if the facts are alleged on those points. The issues here are all supported by the fact that there's absolutely no law showing that the violations alleged are clearly established. But what's the burden? Because, I mean, look, Miller and Moss both say even when the defendants are going to have to be subjected to limited discovery, you don't get to appeal. You guys didn't even have to do that. All you had to do was sit back and wait to see if he would file an amended complaint. And if he did, file another motion to dismiss. I just don't see how you could possibly prevail on your argument here in light of Miller and Moss. So maybe you could address those two cases for us. So, Your Honor, as a preliminary matter, exposure to discovery is one ground that can justify going up on appeal for qualified immunity. But the case law in general, including the Supreme Court's decision in Anderson v. Creighton, looks at qualified immunity at the earliest stage in litigation. And it's an entitlement to be free from the burdens of proceeding with litigation, as the Tenth Circuit noted in their Lowe v. Town of Fairland decision. It doesn't necessarily mean that discovery should be pending. And especially in cases where, as here, it can be made as a matter of law on whether the violations alleged are clearly established, defendants shouldn't have to keep defending against these claims that cannot possibly state a claim. How do we know that? I mean, that's the thing is that there's no discovery that's even on the table at this point. Basically, there's no case. Cases dismissed would leave to amend in three limited areas. So no discoveries on the table. There's no case against your clients unless or until there's an amendment, which may or may not be thrown out. So what's there to appeal from? This doesn't seem to me to be those kind of cases where the judge kind of looks down the road and doesn't really want to make a decision and kind of projects the defendants out into the future and lets them hang there. Well, the Court here did note that it was making, in a later order, the Court explained that it was allowing Mr. Rial to reallege his claims as a concession, because it already had dismissed numerous other claims of defendants all pursuant to defendants' motions to dismiss. So looking at the number of claims dismissed, it decided it didn't have to reach qualified immunity. So the Court's simply saying there's nothing left, which is what we're saying. I don't believe it was, Your Honor. But how do you get around – I'm still sort of waiting for your answer to Judge Watford's question about Miller and Moss. How are they distinguished? They seem to be – seem to pretty much cover this case to me. Well, I think these cases are distinguishable. Miller reiterates the general standard of review, that the appellate review is – excuse me – is limited to issues of law. But in Miller, and I believe in Moss as well, there were disputed facts that had to be resolved in order to reach the issue of qualified immunity. In Miller, it was an absolute immunity case. But in those cases, they weren't orders that denied the claimed existence of immunity, right? Well, in Miller, the order – the order did deny – it did deny it at that point in time, I believe, because it found that it was factional. The Court was deferred. It was deferred. Yeah, they deferred. It wasn't a denial. But the law, both of this circuit and of numerous other circuits, also allows qualified immunity to be determined on a clearly established basis. And it has allowed appeals of those when the Court does defer these decisions. Because correctional defendants, governmental employees, have an entitlement to immunity from the burdens of litigation, and there are numerous decisions. This case's recent decision, although it's unpublished, in Dahlia v. Stare, just looked at an interlocutory qualified immunity claim. And if you look at the order, the Court divided the order into two parts. There was Dahlia v. Stare and then the Dahlia v. Rodriguez. And in the Dahlia v. Rodriguez claim, the Court explained situations showing that it's very, very similar to the case here. And in particular, it noted that the district court had denied the motion asserting qualified immunity there without prejudice on the ground that it was premature. So, I mean, that's nearly identical to what happened here. But we don't know that. I mean, that's what we don't they use the word premature here, but we don't know the circumstances there, do we? What the Dahlia v. Rodriguez, this Court explained was that the district court had denied the summary judgment motion without prejudice on the ground it was premature. A summary judgment motion? Yes. But it was denied on the ground. And it denied it. Denial is not a deferral. In Miller, the Court said an order deferring a ruling is not conclusive. That's the key rationale. So that's why you can't confuse a denial with a deferral. Well, Your Honor, in the Miller case, again, they could not have decided qualified immunity there, and it was a big issue that the appellate court looked at. As far as the Moss order, I mean, I think it's even more telling. Their further factual development was also necessary to the immunity determination. Here, we're relying on the truth, on Mr. Real's own allegations. So that further factual development is not necessary. And in Moss, they did find jurisdiction over the dependent's appeal from a denial of qualified immunity asserted in the motion to dismiss. Well, how do you – how can a plaintiff ever amend if we adopt your rule, which is straight up when you file the complaint, you have to address immunity? Your Honor, I believe that there are situations where it would be appropriate to deny qualified immunity and allow the plaintiff to amend. They didn't – there wasn't a denial of qualified immunity here. It was an implicit denial, Your Honor. There was no denial of qualified immunity. The court denied the motion asserting qualified immunity. And in denying that motion and allowing litigation to continue, it effectively defined it. The court granted your motion. You won. Your motion to dismiss is, I would like to win, either because there's no claim or there's qualified immunity. The court says, you win, no claims, all claims are dismissed. We're back to ground zero. You can amend on these limited claims, but I grant the motion to dismiss. It granted the motion to dismiss as some claims. But the claims that it did allow leave to amend. It granted. Let me just – you know, it granted it to those, and then he permitted an amended complaint, correct? It did, Your Honor. However, his first amended complaint is dismissed. What does that mean? With leave to amend. What does the first part mean? Plaintiff's first amended complaint is dismissed. They did dismiss the complaint, Your Honor. That means it's out the window. Okay. Does that – that means the first amended complaint is nonoperative, out the window, no more complaint, correct? Correct, Your Honor. Then it says, as you correctly note, with leave to file a second amended complaint with limited claims. So at this point, there's nothing on the table. I think there is, Your Honor. Mr. Real was allowed to amend claims that cannot possibly state a clearly established violation. And one very clear example is, in his due process challenge to the administrative appeals process, the district court granted Mr. Real leave to amend, even though it acknowledged that there was no liberty interest at issue, that inmates have no due process right to administrative grievance process, yet it still allowed him to amend his claims against those defendants. And this is exactly what qualified immunity – Well, maybe he has a different theory. I don't know. Maybe he has a bad theory. Maybe he has a good theory. There is no theory, Your Honor, that could allow that claim to go forward because there's no clearly established right. Here we are. Let's see. This happened in June of 2012. And if he had filed his amended complaint, which he may or may not have, the court would have ruled on it. Then we'd have a final order. If there was an amended complaint, you would have had your qualified immunity considered. Probably would have been done with this whole thing long before today. So I'm having trouble understanding, you know, how this really fits within a qualified immunity law. Because your argument sounds to me like a backhanded way of arguing leave to amend should not have been permitted. Your Honor, I'm into the time I was trying to raise a rebuttal, but I would like to answer that question. I think the problem is not just that leave to amend was permitted. The problem is, is that qualified immunity was denied. Aside from leave to amend being permitted, qualified immunity was something the Court decided not to reach on grounds other than those related to the disposition of the defense. And the law of numerous circuits, the First, Second, Third, Fifth, Sixth, Seventh, and Tenth, I believe, have all found those sorts of deferrals to be appealable. And the reason is because defendants are still entitled to immunity from these violations that do not violate clearly established law. And the whole idea of qualified immunity, especially in this sense where we're dealing with correctional officials that are charged with these difficult decisions involving discretion on a daily basis, we don't want these officers to be prohibited from doing what they need to do to preserve institutional safety and security out of fear of litigation. All right? Thank you, Your Honors. Are you planning to divide the argument? We would be happy to, Your Honor. Yes, I was planning to. I didn't see that on here. Oh, I apologize, Your Honors. I apologize. I was planning on discussing the jurisdiction issue, and Ms. Kluwik, my fellow certified student co-counsel, was going to address the merits of this claim today, the qualified immunity itself. Oh, okay. How do you want to divide time-wise? We can take as much time as you want, but we were planning on maybe doing a 50-50 divide if that was all right. All right. We'll try to watch the clock for that. Thank you. May it please the Court, my name is Julia Luster and I'm a certified law student. Under the supervision of Mr. Carter White of the UC Davis Civil Rights Clinic. Myself and my co-counsel, Ms. Elizabeth Kluwik, represent the appellee, Mr. Randy Real. Today I'm here to discuss the jurisdiction issues and she's here to discuss qualified immunity. Today we ask that this Court dismiss for lack of jurisdiction and remand to the District Court for further proceedings for the following reasons. First, the District Court's brief deferral of qualified immunity defense did not allow Mr. Real to remain in the case. Second, the District Court acted within its discretion by issuing what was essentially a scheduling order, allowing Mr. Real an opportunity to amend his remaining claims. And finally, dismissal of a claim without leave to amend is only appropriate when it's clear that the complaint could not be saved by amendment. The, the. Well, let's, let me just stop you there. Let's say that this really was as crystal clear as your opponent suggests, right? That there is just absolutely nothing anyone in their right mind could, could do to amend this complaint, because it's so clear that there wasn't clearly established law that would, would grant the plaintiff a right to relieve. I mean, and so everyone would agree, yeah, you know what, you're, the defendants really are entitled to qualified immunity right now. Why isn't even making them go through another round of motion to dismiss briefing enough of a burden to, to give them a right to, to be heard immediately? The reason why that isn't the case here, Your Honor, is because the District Court found that although Mr. Real's complaint was inartfully pleaded, it was 20 pages handwritten and with 100 pages of attachment, there were potentially cognizable claims that he stated within the complaint that he did file. So as a result, he allowed Mr. Real an opportunity to amend. Can I just, I'm sorry, maybe just go back to my question now. Put aside this case. Yes, Your Honor. Let's talk about a pretend case in which it is crystal clear. Everybody would agree, any right thinking jurist would look at that and say there is nothing that plaintiff can do to make this a viable claim, right? Why isn't the burden of even telling the defendants you're going to have to wait and file another motion to dismiss and go through that whole process, why isn't that enough of a burden to entitle them to be heard immediately on appeal? Because, Your Honor, this is not a significant burden for the defendants to bear in this case. It was a deferral for 30 days, and the District Court said they would take it up if an amended complaint was even filed. In this case, an immunity from suit is not at issue. They're asserting basically an immunity from claims. And qualified immunity does not protect immunity from claims. But so I hope that answers your question, Your Honor. It is immunity from suit and claims. The whole purpose behind qualified immunity is basically to let them off the hook as early as possible if there is no claim against an official. Yes, Your Honor. To let them off the hook as soon as possible. It's not going to be 30 days, and then he's going to have to amend, and then once they have an amended complaint, then they have to file another motion to dismiss, presumably targeted at that. Is there anything in your brief or in the District Court that tells us what conceivable claim, cognizable claim you have? Yes, Your Honor. We do have formulated responses for that. My co-counsel is more adept at it. We'll ask her about that. Thank you, Your Honor. The court today, this Court, addressed both Moss and Miller, which are, for all intents and purposes, on point with the issue here. They both held, they squarely. I'm sorry, counsel. Yes, Your Honor. But your opponent says they're distinguishable because there, the judge and not our court either, you couldn't make a qualified immunity determination there, right? I think that there was this limited discovery that needed to occur before any reasonable judgment could be brought to bear on the qualified immunity question. Here, they're saying that's not the situation, just like we said. This is crystal clear. And that's why I guess I go back to that, my hypothetical case. If they're right on that point, it seems to me they're entitled to review by us of whether that's the right call, then Miller and Moss don't win the day for you, right? Well, yes, Your Honor, that is a possible interpretation. Another is that this should still be within the jurisdiction of the district court to consider the qualified immunity claim in the first place and to deny it or grant qualified immunity prior to interlocutory appeal here. Does that answer your question, Your Honor? In Moss v. U.S. Secret Service, this Court squarely rejected the argument that a deferral was the equivalent of a denial of qualified immunity. And Moss cited Miller v. GAMI, which also stated a similar holding. An order deferring a ruling is not conclusive and is therefore not appealable. These – this case, the case at bar, is distinguishable from Mitchell v. Forsythe and Barron's, which were both – they both involved explicit denial of qualified immunity in those cases. So the district court acted within its discretion by issuing this – this 30-day leave to amend to Mr. Real, who is a pro se litigant. He did state his claims rather inartfully, but he still brought his civil rights claims, and he should be entitled to have them heard. Dismissal of claims without leave to amend is appropriate only when it is clear that the complaint could not be saved by amendment. This is something that was also established in – in Moss. And coupled with the liberal pleading standards that are afforded to pro se litigants, this justifies the 30-day deferral to allow Mr. Real to amend his potentially cognizable claims. With that, Your Honors, I would be happy to turn the floor over to Ms. Kluig if you have no further questions. Kluig, I thank you. Thank you very much. Good morning, Your Honors, and may it please the Court. My name is Elizabeth Kluig, certified law student with the UC Davis Civil Rights Clinic. I am also representing Appellee Randy Real in this matter. This – if this Court finds jurisdiction in this case, it should still remand to the district court to allow the district court to allow the appellee here to amend his complaints to state cognizable claims. I know that Your Honors are concerned that there may not be potentially cognizable claims in this case. First of all, Mr. Real will be able to state a claim for due process violations. In this – in that area, under Toussaint v. McCarthy, it clearly established that due process requires that a prisoner have an opportunity to present his views to the official charged with deciding to transfer him to administrative segregation. And again, this Court applied this standard to the prison gang validation context in Bruce v. Yilst in 2003. That made it clearly established by the time this conduct happened in 2008. Here, Mr. Real will be able to state a cognizable claim of a due process violation because he was not allowed the ability to state his claims with the final decision maker here. In addition, he will be able to state a cognizable claim of due process violation in the actual gang validation itself, and that will be decided under the some evidence rule. Defendants argue that the Swarthout standard here applies instead of the some evidence rule. However, Swarthout does not apply in gang validation actions. Swarthout involved a denial of inmates' petitions for habeas relief from a parole denial. A Section 1983 civil rights action is completely distinguishable from a habeas claim in Swarthout. And in a footnote, in the concurrence in Swarthout, Justice Ginsburg even removed the some evidence rule from the California parole system at issue in Swarthout. The correct standard to apply here in this due process evaluation is some evidence, as was applied in Bruce v. Yilst. This Court recently recognized in Castro v. Terhune just last month in April that the correct standard to apply in evaluating the due process claims of an inmate who is validated as a gang member is the some evidence standard. And the district court in its findings and recommendations also recognized that some evidence applies in this situation. Bruce v. Yilst laid out that the relevant question is whether there is any evidence in the record that could support the conclusion, and this relies on the Court's evaluation of whether there was sufficient indicia of reliability in each source item used to validate the alleged gang member. Here Mr. Real challenges each and every source item used to validate him and challenges the indicia of reliability there. And this is a determination that should be made at the district court level. In Castro, this Court stated that the district court is in the best position to consider in the first instance whether some evidence supports an inmate's validation. In addition to these two due process claims, Mr. Real may also state a cognizable claim for a due process violation in the confiscation of his address book, as well as other associated claims that he may make in his second amended complaint. If Your Honors do not, oh, I'm sorry. Yes, also going back to the idea of the policy behind qualified immunity. In Mitchell v. Forsythe, the Supreme Court stated that qualified immunity is a true immunity from suit, which would effectively be lost if a case is erroneously permitted to go to trial. Clearly this case is nowhere near trial. It's still in the pleading stages. Therefore, this policy rationale does not apply. In Appellate's opening brief at pages 6 and 7, they stated that the district court properly allowed leave to amend for both Mr. Real's conspiracy and Eighth Amendment claims. Therefore, this litigation will go on, regardless of whether qualified immunity is granted today in these subsequent claims. The litigation will go on, and therefore it would not be a true immunity from suit under the Mitchell doctrine. And that policy rationale would not apply in this case. Can I, I guess, just ask one question that kind of goes back to your co-counsel's domain. But I'm, I mean, you've made a persuasive case on, in terms of why there might be a cognizable claim here. But I'm trying to figure out whether the proper ground for us to rule is to say that there's no jurisdiction, or rather to say that there is limited jurisdiction basically for us to engage in the review of the arguments you just made, but then sort of reject them on the merits, as they were. Your Honor. Your Honor, we would request that this Court dismisses the action for a lack of jurisdiction. Or, in the alternative, if you do find jurisdiction, that you remand to the district court to allow Mr. Rial to amend his complaint. I know those are the two choices, but can you kind of help us with them? Which we prefer. Well, not even which you prefer. But what's the, what is the sounder of those two? Well, we do believe, first of all, there is no jurisdiction for this case to be heard at this point. As Your Honor has mentioned, the motion to dismiss was granted. There, it was granted. The defendants got exactly what they wanted from this situation. There were a few claims that were allowed leave to amend, but otherwise the complaint is over, and just gave an opportunity to amend his complaint. And it was just a brief scheduling order, a brief deferral of 30 days to allow Mr. Rial to amend his complaint. So we do argue that there is no jurisdiction for this case to be heard today. Thank you. Thank you. Is she right in saying that you agree that some of these claims have to go forward anyway? Yes, as I mentioned in my opening statement. The conditions of confinement and Eighth Amendment, excuse me, Eighth Amendment conditions of confinement and the conspiracy claims, I believe were fairly granted leave to amend, because there is, it is possible to allege facts. I don't know if Mr. Rial had those facts happen to him. I mean, I don't know. It's just not clear at this point whether a clearly established violation occurred or not. One of the problems with this jurisdictional argument is that the law is quite clear that qualified immunity is appealable at the motion-to-dismiss stage when it is denied. Qualified immunity here was not granted. And Behrens v. Pelletier very specifically explains that appealability determinations are made for classes of decisions. We don't look at individual cases and nitpick out whether those cases should be appealed. Instead, it's a case, you look at the court, at the classification, and here it's quite clear that denials of qualified immunity on motion-to-dismiss are appealable. With respect to plaintiff's arguments concerning being able to amend his claims to state a claim, he has not, at any point in this appeal, explained how any claim he could state could possibly state a clearly established violation of law. And that is the point of qualified immunity, to prevent claims from going forward when no clearly established violation occurred. Well, won't that, if he amends his complaint, that will be a determination for the district court to make, and that may be the end of the case, right, because they're potentially as qualified immunity as you point out? I believe that either this Court or the district court has jurisdiction where they can consider the merits of qualified immunity analysis. And there are cases where the court has said, look, this is the point of qualified immunity. Is it your position that the record is factually developed to the extent that we could make that determination? Yes, Your Honor, it is. Every single claim he is asserting, plea for amendment, we have brought on appeal. It is clear from the record, abundantly clear, that no clearly established violation has occurred. Now, let me ask you this. Let's say we agree with you that there is jurisdiction, but, you know, we can affirm on any grounds. We could say, well, there's jurisdiction as argued, but, of course, we could affirm because the district court said there's no claim, it's dismissed. But sometimes in these cases where the issue hasn't been first considered by the district court, we often remand, rather than deciding these issues for the first time on appeal. So let's just assume we agree there's jurisdiction, and then we remand to the district court to say, decide. Decide qualified immunity. Decide on the existing claims. But that wouldn't preclude an amendment, would it? I believe it would, Your Honor, because there's a – it's clear from the complaint that no clearly established violation occurred. And at one point – And on the – well, let's just say on the claims as pled, but why would this position in the end preclude the ability to amend, at least as argued by counsel, and then the district court would have to rule on that as well? Well, I believe this – that question is answered by the Supreme Court in the Mitchell v. Forsyth decision. And there, the Court did a very involved analysis explaining that the clearly established prong is a question of law and can be decided without further factual development. Here, if you look at the claims at issue, it is quite clear. Mr. Rial has a claim, again, about due process right to an investigative employee. No such Federal due process liberty interest exists. There are no allegations he could add to this to make it a clearly established violation. His gang validation, again, it is defendant's position that Wilkinson v. Austin, the Supreme Court's decision which addresses administrative housing decisions resulting from placements including gang validation, similar to gang validation placements, found no evidence, no sum evidence review was required. But even if we went with Hill v. – Superintendent v. Hill's sum evidence standard, Mr. Rial's claim still failed because there were six items of evidence used to support his validation. Federal law requires one. The courts cannot reweigh this evidence. It's sufficient that the evidence could support the conclusion reached. And here at issue, there is no – So then you'd be arguing, just to be clear, I understand your point that you don't think there's any clearly established law that's been violated here. But if we were to remand it to the district court and say, decide this, the district court would still be in a position to determine whether or not there was a basis for amendment, correct? And they may or may not agree with you and might agree with Mr. Rial. But you can't completely cut off the consideration of whether there's a basis for amendment. Can you? I believe here you can. I don't think it's true in all qualified immunity cases. But you're saying it can because just as pled, you're just saying any possible variation on the theme ends up in the exact same place. Well, yes, Your Honor. And this is really illustrated by the fact that we didn't appeal the conditions of confinement or conspiracy, Denali-Clough, you may know those, because it isn't There weren't enough facts there to determine. Here, the complaint attached the gang validation packet. It attached all kinds of information showing, and the district court showed on a lot of it, it properly dismissed the claims, recognizing, for instance, that the First Amendment speech and association claims. The court found that, and the reason it dismissed the claims was because it didn't have a basis for amendment. One quick closing comment, Your Honor. Thank you. One of the things that plaintiff's counsel had referred to was the fact that Mr. Real did not receive opportunity to be heard. He did. He was allowed an interview, which he declined, concerning his gang validation, which is what caused the administrative segregation placement. And he also submitted a page of handwritten objections addressing each of the source items used to validate him. And those are in the record at pages 76 and 77, and I believe 85 as well in the excerpts. So he did receive that notice. All right. Thank you, Your Honors. The case of Real v. Walker is submitted. I would like to thank Ms. Blewick and Ms. Lester, the certified law students, for your argument and for UC Davis, Mr. White, for participating in the court's pro bono program. I'd also like to thank Ms. Ganssen for her argument, and I know that from the standpoint of counsel, it's always better to have a brief that is intelligible. As I understand, that's, of course, one of the complaints with the complaint in this case. So I also appreciate your very clear briefing and argument. The case just argued is submitted and we're adjourned. All rise.
judges: Marbley, McKeown, Watford